```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA

                     Alexandria Division


BOSTON MUTUAL LIFE INSURANCE  )
COMPANY                       )
                              )
     Plaintiff,               )
                              )
        v.                    )    1:06cv1072 (JCC)
                              )
JOHN WILLIAM LUDWIG AND       )
BRANDY SNIDER                 )
                              )
     Defendants.              )
```

### **M E M O R A N D U M   O P I N I O N**

This case arises out of the slaying of Ms. Karen Ludwig and the subsequent dispute regarding the appropriate beneficiary of her life insurance policy. The issue before the Court is whether a person convicted of voluntary manslaughter, but not murder, is precluded as a beneficiary of the decedent's life insurance proceeds by the slayer statute in Pennsylvania or Virginia. For the reasons that follow, the Court finds that such a conviction bars recovery, regardless of which jurisdiction's law is applied.

### **I. Background**

Mr. John William Ludwig ("Mr. Ludwig") and Ms. Karen Ludwig ("Ms. Ludwig") were married on October 26, 2002 in Loudoun County, Virginia. While employed with Toll Brothers, Inc., Ms. Ludwig was covered by a group life insurance policy issued by the

1

Plaintiff/Counter-Defendant Boston Mutual Life Insurance Company ("Boston Mutual"). Under the terms of the policy, a death benefit of $100,000 was payable upon the death of Ms. Ludwig, and an additional $100,000 was payable if her death was an "accident." Mr. Ludwig was designated as the primary beneficiary, while Brandy Snider ("Ms. Snider"), Ms. Ludwig's daughter from a previous marriage, was designated as the secondary beneficiary.

On July 4, 2005, Ms. Ludwig died as the result of multiple gunshots wounds inflicted by Mr. Ludwig. On July 20, 2006, Mr. Ludwig was found guilty of voluntary manslaughter and sentenced to six and one-half years' imprisonment. He is currently incarcerated and represented by a guardian *ad litem*. Now, in a quintessential act of *chutzpah*, Mr. Ludwig claims that he is entitled to the death benefit proceeds from his wife's life insurance policy.

On September 19, 2006, Boston Mutual filed an interpleader complaint in this Court naming Mr. Ludwig and Ms. Snider as Defendants. The interpleader complaint seeks to resolve the competing claims for the proceeds of Ms. Ludwig's insurance policy. Ms. Snider filed her answer and counterclaim on October 27, 2006.

Ms. Snider, in her capacity as personal representative for Ms. Ludwig's estate ("the Estate"), filed a motion to

intervene that sought, *inter alia*, to have this Court exercise supplemental jurisdiction over state tort claims for wrongful death and conversion that were brought by the Estate and are currently pending in Loudoun County Circuit Court.  After a hearing, this Court denied the motion and ruled that only two issues remain in this case:  First, whether the appropriate life insurance policy beneficiary of Karen Ludwig's $100,000 death benefit is Brandy Snider or John Ludwig; and second, whether Karen Ludwig's death was an "accident" within the meaning of the policy, entitling the appropriate beneficiary to an additional $100,000 accidental death benefit.  *See* (Mem. Op., Feb. 23, 2007, at 6).

　　　　Ms. Snider filed a motion for partial summary judgment on the first of these two issues, seeking this Court to declare that John Ludwig is barred from recovery and Brandy Snider is the appropriate beneficiary.  Similarly, Boston Mutual filed a motion to dismiss Ms. Snider's counterclaim for failure to state a claim on the grounds that Defendant John Ludwig is the primary beneficiary, and Ms. Snider, as the contingent beneficiary, has no right to the proceeds as a matter of law.  These issues obviously dovetail, and since no material dispute of facts exists, they are ripe for disposition.

## II. Standard of Review

In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* A motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996)(citations omitted). In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs.*, 933 F.2d 1253, 1259 (4th Cir. 1991)(citations omitted).

The very existence of a scintilla of evidence or of unsubstantiated conclusory allegations, however, is insufficient

to avoid summary judgment. *Anderson*, 477 U.S. at 248-52. Rather, the Court must determine whether the record as a whole could lead a reasonable trier of fact to find for the non-movant. *Id.* at 248.

### III. Analysis

The central issue controlling the two motions before the Court is whether Defendant John Ludwig, having killed his wife and been convicted of voluntary manslaughter, is barred from recovering on her life insurance policy. As the primary beneficiary, Mr. Ludwig is *legally* entitled to the proceeds as a matter of contract law. Nevertheless, his recovery may be barred by a "slayer statute"--a statute that generally prohibits a person from acquiring or receiving any property of the individual that he killed. *See, e.g.,* UNIF. PROBATE CODE § 2-803. However, slayer statutes are hardly uniform, and vary considerably state to state. Before the Court can reach the question of whether Mr. Ludwig is barred, it must first decide which state's law, and therefore which state's slayer statute, governs this inquiry.

The parties agree that the appropriate law is either Pennsylvania or Virginia law, but their agreement ends there. Mr. Ludwig and Boston Mutual both argue that Virginia law applies and that Virginia's slayer statute does not bar a person convicted of voluntary manslaughter from collecting life insurance proceeds of the decedent. To the contrary, Ms. Snider

argues that Pennsylvania law is appropriate, which has a slayer statute broader than that of Virginia and would clearly encompass Mr. Ludwig.  The Court agrees that, on its face, the difference between the two states' law appears to be material.  Nevertheless, as this Court will now explain, although Pennsylvania law is controlling, the result would be the same regardless of which jurisdiction's law is applied.

    A.   <u>Whether Pennsylvania or Virginia law governs the policy</u>

To decide which jurisdiction's law is controlling, the Court first must decide the state in which the policy was delivered.  The state of delivery controls the Court's choice-of-law analysis since Ms. Ludwig's life insurance policy contains a choice-of-law provision that declares: "[t]his Policy is delivered in and governed by the law of the State of Delivery." Virginia law gives strong effect to choice-of-law provisions, and thus, the Court will enforce it.[1]  *Woodson v. Celina Mut. Ins. Co.*, 177 S.E.2d 610 (Va. 1970); *Paul. Bus. Sys. Inc. v. Cannon U.S.A., Inc.,* 397 S.E.2d 804, 807 (Va. 1990)(holding "[w]here parties to a contract have expressly declared that the agreement will be construed as made with reference to the law of a

---

[1] The Court uses Virginia choice-of-law rules in its analysis of the choice-of-law provision because, in an action based upon diversity of citizenship such as this one, the relevant state law controls. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  The federal district court must apply the law of the forum state, including its choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  Accordingly, as the Eastern District of Virginia, this Court will proceed in applying the choice-of-law rules of Virginia.

6

particular jurisdiction, we will recognize and enforce it, applying the law of the stipulated jurisdiction.") *See also Union Cent. Life Ins. Co. v. Pollard*, 26 S.E. 421 (Va. 1896) (upholding a choice-of-law clause in an insurance contract). Therefore, to give effect to this choice-of-law provision, the Court must determine the State of Delivery.[2]

On the same page of the policy as the choice-of-law provision, the policy states, in all capital letters, "STATE OF DELIVERY: COMMONWEALTH OF PENNSYLVANIA." Mr. Ludwig and Boston Mutual submit that Virginia should be the state of delivery since that is where the certificate of coverage was issued and the slaying occurred. This argument fails for two reasons. First, with respect to the policy's stipulation that the state of delivery is Pennsylvania, this stipulation is considered part of the policy's choice-of-law provision, which, as previously stated, is given strong effect in Virginia. Second, Boston Mutual, as the contract's author and the insurer, drafted this policy to unambiguously provide that Pennsylvania was to be considered the state of delivery. With this provision, Boston Mutual's intent is made clear that it prefers a single

---

[2]Interestingly, the Court's decision to uphold this choice-of-law provision is effectively inconsequential. Even if this choice-of-law provision was invalid, the state of delivery would still be the controlling jurisdiction since, under Virginia law, an insurance contract is governed by the state of delivery. *Hardware Mut. Cas. Co. v. Wendlinger*, 146 F.2d 984, 989 (4th Cir. 1944).

7

jurisdiction's law to control, presumably so the policy's coverage and potential disputes would be interpreted uniformly instead of widely varying from state to state where certificates were issued. Thus, giving effect to the unambiguous choice-of-law provision and the parties' *ex ante* contractual intent, Pennsylvania shall be considered the state of delivery, and accordingly, Pennsylvania law will apply.[3]

### B. Whether Pennsylvania's slayer statute applies

Having established that Pennsylvania law governs the policy, the next question is whether this includes Pennsylvania's slayer statute. Boston Mutual and Defendant Ludwig argue that, even if Pennsylvania law applies, the choice-of-law provision does not incorporate Pennsylvania law in its entirety, but applies only to the life insurance policy's validity, interpretation, execution, and effect, which are not at issue in this case. The Court wishes to highlight the irony of Boston Mutual's position: as the drafter of the policy, it is now arguing to limit the scope of its own valid choice-of-law

---

[3] Boston Mutual submits that, upon the conclusion that Pennsylvania law is to apply, Pennsylvania's choice-of-law rules require this Court to apply Virginia law. Perhaps without realizing it, Boston Mutual is essentially asking this Court to apply the familiar doctrine of "renvoi," which as far as this Court can tell, has never been applied under Virginia law. *See Asbestos Removal Corp. of Am. v. Guaranty Nat'l Ins. Co.*, 1995 U.S. App. LEXIS 4131 (March 2, 1995). *See also* RESTATEMENT (SECOND) OF CONFLICTS § 8 (1971)(stating that "[w]hen directed by its own choice-of-law rule to apply 'the law' of another state," the forum applies the state's law exclusive of its choice-of-law rules).

provision.  Irony notwithstanding, the Court is not persuaded by Boston Mutual's position.

       The extent to which a jurisdiction's law is incorporated by an insurance policy's choice-of-law provision has not been addressed in Virginia.  Other jurisdictions to address the issue have held that if a life insurance policy provides that it shall be construed and governed by the laws of a specific state, the applicable statutes will be considered part of that contract.  *See, e.g., Woelfling v. Great-West Assur. Co*, 285 N.E.2d 61 (Ohio 1972)(holding that a group life insurance policy that provided that construction of its terms was to be governed by Illinois law was broad enough to incorporate Illinois law in its entirety).  Therefore, when the laws of a state are adopted by the parties, the same laws of that state govern questions arising out of the same policy.  *See, e.g., Kahn v. Great-West Life Assur. Co.*, 307 N.Y.S.2d 238 (N.Y. 1970)(beneficiary cannot assert the statutes of New York when the parties stipulated to Pennsylvania law); *See also Michael v. John Hancock Mut. Life Ins. Co.,* 334 P.2d 1090 (Colo. 1959).

       Upon consideration of other jurisdiction's decisions as persuasive, this Court finds that the result would be similar under Virginia law, especially in light of the great weight given in Virginia to parties' choice-of-law stipulation.  *See Woodson v. Celina Mut. Ins. Co.*, 177 S.E.2d 610 (Va. 1970); *Paul. Bus.*

*Sys. Inc. v. Canon U.S.A., Inc.,* 397 S.E.2d 804, 807 (Va. 1990). When an insurer and the insured stipulate that a specific jurisdiction's law will govern a life insurance policy, they may not engage in an *ex post* pick-and-choose as to what parts of the law are more favorable for them, and that includes questions regarding which persons are entitled to take as beneficiaries. Therefore, since Boston Mutual and Ms. Ludwig stipulated in the policy that Pennsylvania law will govern, Pennsylvania's slayer statute will apply.

> C. <u>Whether Pennsylvania's slayer statute bars Defendant Ludwig from recovery</u>

The Pennsylvania slayer statute provides that "no slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent" and defines slayer as "any person who participates, as a principal or as an accessory before the fact, in the wilful and unlawful killing of any other person." 20 PA.C.S. §§ 8802, 8801 (2006). As to life insurance proceeds, the Pennsylvania Code also provides that:

> Insurance proceeds payable to the slayer as the beneficiary or assignee of any policy or certificate of insurance on the life of the decedent . . . shall be paid to the estate of the decedent, unless the policy or certificate designates some person not claiming through the slayer as alternative beneficiary to him.

20 PA.C.S. §§ 8811 (2006).

Applying the Pennsylvania statutory scheme to this case, although only convicted of voluntary manslaughter, John

10

Ludwig undisputedly participated in the wilfull and unlawful killing of Karen Ludwig, and is therefore a "slayer" under Pennsylvania law.[4]  This precludes his acquiring or receiving any benefit as the result of her death.  Thus, Brandy Snider, as the contingent beneficiary, is rightfully entitled to the proceeds from Karen Ludwig's life insurance policy.

>   D.  <u>In the alternative, Virginia law also bars Defendant Ludwig's recovery</u>

Even if Virginia law was controlling, Defendant Ludwig would still be barred.  Although VA. CODE. ANN. § 55-401, *et seq.*, defines "slayer" as one "who is convicted of the murder of the decedent," the Supreme Court of Virginia has made it crystal clear that this statute does not abrogate the common law.  In *Arrington v. Peoples Security Life Ins. Co.*, an insurer refused to pay a widow the proceeds of her husband's life insurance proceeds because it was believed that she had procured or participated in her husband's death.  243 S.E.2d 705, 706 (Va. 1992).  Since the widow had neither been prosecuted nor convicted of murder, the trial court granted summary judgment in her favor on the grounds that the aforementioned Virginia slayer statute abrogated the common law, and required a conviction for murder. *Id.* On appeal, the Supreme Court of Virginia considered the question of:  "whether the common law doctrine that no person

---

[4]Notably, neither Mr. Ludwig nor Boston Mutual argue that Pennsylvania's slayer statute does not bar a person convicted of voluntary manslaughter from recovering life insurance proceeds.

11

should be permitted to profit by his own wrong has been superseded by . . . Code §§ 55-401 to -415." *Id*. at 707. The court held that it had not.

> [T]o alter or abrogate the common law policy, the General Assembly must manifest its intent to do so. Our review of the legislation, including the [] amendments to the definition of 'slayer' in Code § 55-401(1)(ii) reveals no express language overriding the common law, nor is such an intent manifest. Indeed, Code § 55-414 specifically states that the statutes are to be construed to effectuate 'the policy of this Commonwealth that no person shall be allowed to profit by his own wrong.' This pronounced public policy, that no person should be allowed to profit from his wrongful acts, has been reaffirmed, not abrogated, by the General Assembly.

*Id.* The Supreme Court thus concluded that if the life insurance company could prove by a preponderance of the evidence that the wife had "procured, participated in, or otherwise directed" her husband's death, she was not entitled to the proceeds. *Id.*

This decision unambiguously expresses that Virginia's slayer statute has not abrogated the common law. Moreover, as referenced in *Arrington*, Section 55-414 states that the slayer statute "shall be construed broadly in order to effect the policy of this Commonwealth that no person shall be allowed to profit by his own wrong, wherever committed."[5]  VA. CODE. ANN. § 55-414.

---

[5] Boston Mutual and Mr. Ludwig argue that the legislative history demonstrates a manifest intent to overrule the common law since the General Assembly of Virginia considered other statutes that contained broader text, but were inevitably rejected. Importantly, counsel did not provide the Court with any citations of such legislative history. Nevertheless, taking this proffer by counsel as true, the General Assembly actually passed and enacted

12

This provision, when complemented by the Supreme Court of Virginia's guidance in *Arrington*, clearly precludes a person convicted of voluntary manslaughter from recovering the victim's assets.

Thus, in the Commonwealth of Virginia, a person who kills another and is convicted of voluntary manslaughter, but not murder, is barred from recovering as a beneficiary under the decedent's life insurance policy.  As applied to this case, even if Virginia law were to apply, Defendant John Ludwig still would not be entitled to any proceeds of Karen Ludwig's insurance policy.

### E.  Summary of the Case

This Court finds that Pennsylvania law governs the life insurance policy as well as questions arising out of the policy, including issues regarding which persons are entitled to take as beneficiaries.  Pennsylvania's slayer statute prohibits John Ludwig from benefitting from the voluntary manslaughter of his wife, Karen Ludwig, and is barred from receiving her life insurance proceeds.  Moreover, even if Virginia law applied, the result would be the same since Virginia's common law rule that no person shall be allowed to profit by his own wrong has not been abrogated by any act of the General Assembly, thereby precluding

---

§ 55-414, which clearly articulates how courts shall construe these provisions.  Such unambiguous legislative direction weighs considerably on the Court, especially when compared to the multitude of weak inferences that may be drawn from other bills that were drafted, but not enacted.

a person convicted of voluntary manslaughter from receiving life insurance proceeds.

Accordingly, Brandy Snider's motion for partial summary judgment will be granted, Boston Mutual's motion to dismiss will be denied, and John Ludwig will be dismissed from this case. Looking forward, Brandy Snider will be entitled to $100,000 in life insurance proceeds, and the only remaining issue is whether Karen Ludwig's death was an "accident" within the meaning of the policy, thus entitling Ms. Snider to an additional $100,000 accidental death benefit.

### IV. Conclusion

For the foregoing reasons, Ms. Snider's motion for partial summary judgment will be granted; Boston Mutual's motion to dismiss will be denied; and Defendant John Ludwig will be dismissed.

An appropriate Order will issue.

May 10, 2007                          _____/s/_____
Alexandria, Virginia                         James C. Cacheris
                                      UNITED STATES DISTRICT COURT JUDGE